David D. Lin (*pro hac vice* forthcoming)
david@iLawco.com
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Fornix Holdings LLC and CP Productions, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Fornix Holdings LLC and CP Productions, Inc.

*Plaintiffs*,

v.

John Doe #1 d/b/a DaftSex.com, John Doe #2 d/b/a PornWild.com,  EasyDNS Technologies Inc., Namecheap, Inc., Cloudflare, Inc., and Google, LLC

*Defendants*.

Case No.:

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, ORDER TO ALLOW ALTERNATIVE SERVICE, AND ORDER TO GRANT LIMITED EXPEDITED DISCOVERY**

1

**<u>Table of Contents</u>**

**PRELIMINARY STATEMENT** ..................................................................1

**FACTUAL BACKGROUND**..................................................................2

    **I.**      **Plaintiffs' Business and Intellectual Property**.............................2

    **II.**    **Infringer Defendants' Illegal Activities** .......................................3

          A.     Defendant DS's Infringing Conduct..................................3

          B.     Defendant PW's Infringing Conduct .................................4

**ARGUMENT**...........................................................................................5

    **I.**      **Plaintiffs Satisfy the Legal Standards for an *Ex Parte* Temporary Restraining Order**...................................................................................5

          A.     Plaintiffs are Likely to Succeed on the Merits of Their Copyright Infringement Claim...........................................................................7

          B.     Plaintiffs are Likely to Suffer Irreparable Harm in the Absence of a TRO    12

          C.     The Balance of Equities Tips Strongly in Plaintiffs' Favor, Especially in the Context of Willful Copyright Infringement ...........................13

          D.     An Injunction against Copyright Infringement Is in the Public Interest    14

          E.     An *Ex Parte* TRO is Appropriate in This Case .................................14

          F.     Minimal or No Security Should be Required by Plaintiffs .............15

    **II.**    **Plaintiffs Are Entitled to Several Equitable Remedies** .........................16

          A.     16

          Plaintiffs are Entitled to Expedited Discovery to Reveal Infringer Defendants' Identity ........................................................................16

    **III.**   **Plaintiffs Request That the Court Permits Alternative Service to Infringer Defendants by Email through the Domain Name Registrar in This Case** .18

**CONCLUSION** ........................................................................................20

i

1

## Table of Authorities

2

**Cases**

3   *A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 892 P.2d 1354 (1995) ...............................7

4   *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ....................................10

5   *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375 (Fed. Cir. 2013) ..........................................16

6   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ..........................6

7   *AMA Multimedia LLC v. Unknown Parties*, No. CV-15-01674-PHX-ROS, 2015 WL
8       13651008 (D. Ariz. Sept. 23, 2015)..............................................................................17

9   *Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir.1999).................................................15

10  *Bleiberg Ent., LLC v. John & Jane Does 1-47*, No. CV-13-00595-PHX-GMS, 2013 WL
11      3786641 (D. Ariz. July 19, 2013) ...........................................................................16, 17

12  *BMO Harris Bank, N.A. v. Guthmiller*, No. CV-14-00275-PHX-JAT, 2014 WL 2600362
13      (D. Ariz. June 10, 2014) .............................................................................................18

14  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010).............8, 9

15  *Breaking Glass Pictures, LLC v. Doe*, No. CV-13-00599-PHX-GMS, 2013 WL 3805637
16      (D. Ariz. 2013).............................................................................................................17

17  *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th
18      Cir.1997).......................................................................................................................9

19  *Dead Season LLC v. Doe 1*, No. CV-13-00592-PHX-GMS, 2013 WL 3805590 (D. Ariz.
20      2013).............................................................................................................................17

21  *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957 (2016).............9, 10, 13, 14

22  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011)...............12

23  *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ........................................................6

24  *Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000) .............................................................16

25  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ..........................12

26  *Hydentra HLP Int. Ltd. v. Sagan Ltd.*, 783 F. App'x 663 (9th Cir. 2019) ..........................8

27  *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL
28      7430062 (D. Ariz. Mar. 3, 2011) ...............................................................................19

*LNS Enterprises LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065 (D. Ariz. 2020)...........7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ...........................8

*Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL

    330346 (D. Ariz. Jan. 21, 2010) ......................................................................................6

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) .............10

*Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012) ...............................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,(9th Cir. 2007) ................................11

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir.2006) .............................6

*Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)........................................19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).........................7

*Small v. Avanti Health Sys., LLC*, 661 F.3d 1180 (9th Cir. 2011)......................................12

*Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493 (D. Ariz. 2012)..................16, 17

*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995) .........................................13

*Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508 (D. Ariz.

    July 14, 2021) ...........................................................................................................14, 15

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) .....................9

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ...........................................................6


**Statutes**

17 U.S.C. § 106(5) ................................................................................................................10

17 U.S.C. § 107 .....................................................................................................................11

17 U.S.C. § 410(c) ..................................................................................................................9

17 U.S.C. § 501(b) ................................................................................................................10

17 U.S.C. § 502.....................................................................................................................16

28 U.S.C. § 1400(a) ................................................................................................................9

iii

Ariz. R. Civ. P. 4.1(k)(1) ................................................................................18

Ariz. R. Civ. P. 4.2(a) .....................................................................................7

Fed. R. Civ. P. 4(f) ........................................................................................19

Fed. R. Civ. P. 65(b)(1) ...................................................................................6

Fed. R. Civ. P. 65(c) ......................................................................................15

Fed. R. Civ. P. 65(d)(2)(C) ............................................................................16

iv

## PRELIMINARY STATEMENT

Plaintiff Fornix and Plaintiff CP Productions are both Arizona companies that create and manage adult entertainment content. Defendant John Doe #1 d/b/a DaftSex.com and Defendant John Doe #2 d/b/a Pornwild.com have habitually infringed upon Plaintiffs' content, reposting the content on their own sites, which are both streaming adult entertainment sites. Two Defendant John Does sites are maintained by two registrar services Defendant EasyDNS Technologies, Inc. and Defendant Namecheap, Inc., as well as another company, Defendant Cloudflare, Inc. for infrastructure and website security. Defendant Google, LLC provides a search service that returns Defendant John Does' sites when a search is conducted for Plaintiffs' tradename, "Gloryhole Swallows".

Defendant John Doe #1 and Defendant John Doe #2 have purposely hidden their identities and have blatantly and repeatedly infringed upon Plaintiffs' content. Accordingly, due to the repeated infringing behavior of Defendant John Doe #1 and Defendant John Doe #2, their extended efforts to conceal their identities, and their disregarding of the multiple takedown notices issued by Plaintiffs, Plaintiffs now submit this motion to the Court to take down the websites containing Plaintiffs' content by enjoining Defendants EasyDNS Technologies, Inc. and Namecheap, Inc. from maintaining the websites and reveal identities of Defendants John Doe #1 and John Doe #2. Plaintiffs also request that Defendant Cloudflare stop providing services to Defendants John Doe #1 and John Doe #2, and issue notice to Defendant Google, LLC to remove the Defendants' websites from search results.

Accordingly, Plaintiffs now submit this *ex parte* Application for a Temporary Restraining Order; Order to Show Cause for Preliminary Injunction; Order to Allow Alternative Service; and Order to Grant Limited Expedited Discovery.

//
//
//

1

## <u>FACTUAL BACKGROUND</u>

### I.   Plaintiffs' Business and Intellectual Property

Plaintiff Fornix is an Arizona corporation specializing in media content management. Complaint ¶ 2; Graves Decl. ¶ 2. Plaintiff CP Productions is an Arizona corporation that engages in adult entertainment content production and distribution. Complaint ¶ 10; Graves Decl. ¶ 3. CP Productions produces, markets, and distributes visual and audiovisual works that depict nude females and males engaging in sexual activities. Complaint ¶ 28. Since 2011, CP Productions has been operating a website located at <gloryholeswallow.com> ("GHS Website") to distribute its visual and audiovisual works. Complaint ¶ 30; Graves Decl. ¶ 5. The GHS Website is the exclusive channel through which CP Productions distribute its full-length videos and photographs. Complaint ¶ 29; Graves Decl. ¶ 5.

Currently, CP Productions has produced and distributed nine hundred and sixty-seven (967) audiovisual works on the GHS Website ("Works"). Complaint ¶ 30; Graves Decl. ¶ 7. Fornix was formed in 2018 to prosecute, manage, and protect the copyrights in the Works. Graves Decl. ¶ 11. As to today, Fornix has registered copyrights for one hundred and fifty-seven (157) of the Works ("Registered Works"). Complaint ¶ 33; Graves Decl. ¶ 12. Fornix is seeking copyright registration for the remaining eight hundred and ten (810) of the Works ("Unregistered Works"), and will also continue to seek copyright protection for works to be produced by CP Productions in the future. Complaint ¶ 34; Graves Decl. ¶ 13. Fornix authorizes exclusively CP Productions to use and distribute the Registered Works through the GHS Website. Complaint ¶ 35; Graves Decl. ¶ 14.

To access Plaintiffs' full-length video content on the GHS Website, a visitor must create an account and pay for a subscription to become a member. Complaint ¶¶ 38-41; Graves Decl. ¶ 9-10. Without membership, a visitor can only view a limited amount of free trailer-size videos per IP address. Complaint ¶ 37; Graves Decl. ¶ 8. Only those

//

with paid memberships can access unlimited full-length, high-resolution videos and full collections of photographs on the GHS Website. Complaint ¶ 41; Graves Decl. ¶ 8.

Plaintiffs prohibit unauthorized redistribution of their content. In fact, in every video, Plaintiffs include a "warning" announcement at the beginning that "It's illegal to share!". Complaint ¶ 42. Plaintiffs also regularly monitor the Works and existing copyright infringement across the Internet. Complaint ¶ 43; Graves Decl. ¶ 15.

## II.   Infringer Defendants' Illegal Activities

With no authorization from Plaintiffs, Infringer Defendants have been distributing unauthorized copies of the Works through their websites located at <daftsex.com> ("DS Website") and <pornwild.com> ("PW Website"), as well as through other websites, namely <daftsex.tv>, <daftsex.porn>, <pornwild.to>, and <pornwild-to.nicepornproxy.com>. Complaint ¶ 5-6; Graves Decl. ¶ 17.

### A.   Defendant DS's Infringing Conduct

Since at least 2015, Defendant DS has been promoting and distributing unauthorized copies of Plaintiffs' Works via the DS Websites. ¶ 55; Graves Decl. ¶ 18. All of the DS Websites provide a search bar on the top of the webpage, allowing visitors to freely search Plaintiffs' Works by Plaintiffs' trade name "Gloryhole Swallow." Complaint ¶ 55; Graves Decl. ¶ 19. The DS Websites do not show a total count of the videos under the "Gloryhole Swallow" category, but the Plaintiffs' third-party enforcement companies estimate that at least 1,700 links on the DS.com Website contain listings displaying Plaintiffs' Works. Complaint ¶ 56. DS profits from the use of Plaintiffs' Works by promoting a paid subscription service on the same webpage where it displays the Plaintiffs' Works. Complaint ¶¶ 58-59.

Defendant DS's true identity is unknown to Plaintiffs. Defendant masks the ownership information of the DS Websites (known as the websites' "WHOIS" data) with a privacy service. Complaint ¶ 45; Lin Decl. ¶ 9. Through the DS Website, Defendant promotes unauthorized copies of the Works by offering them for free viewing on the DS Websites. Complaint ¶¶ 61-62; Graves Decl. ¶ 18. Based on the sheer amount of entries

and the estimated view counts under each entry, Plaintiffs believe that hundreds, if not thousands, of visitors to the DS Websites have accessed and viewed the unauthorized copies. Graves Decl. ¶ 19.

Defendant DS's infringement of Plaintiffs' Works has been brazen and willful. Through a contact email address—copyroster@gmail.com—Plaintiffs have sent numerous takedown notices to the DS Website. *See* Graves Decl. ¶¶ 24–25. However, Plaintiffs never received any response from the DS Website. Graves Decl. ¶ 25. Despite Plaintiffs' enforcement efforts, over seventeen hundred (1,700) of the webpage entries still remain live and continuously allow visitors of the DS Website to freely access the Works. Graves Decl. ¶ 26.

## B. Defendant PW's Infringing Conduct

Defendant PW has followed a similar pattern of behavior as Defendant DS. Since at least 2021, PW has been promoting and distributing unauthorized copies of Plaintiffs' Works via the PW Websites. Complaint ¶ 78; Graves Decl. ¶ 20. The PW Websites provide a search bar on the top of the main webpage, allowing visitors to freely search Plaintiffs' Works by Plaintiffs' trade name, "Gloryhole Swallow." Complaint ¶ 79; Graves Decl. ¶ 21. Again similar to the DS Website, there is no total count of the videos under the GHS trade name, however there are over one thirteen (1,300) active links on the PW.com Website. Complaint ¶ 80; Graves Decl. ¶ 21. The videos on the PW Websites display an estimated view count. Complaint ¶ 81. Upon information and belief, each of the Plaintiffs' Works uploaded to the PW Websites have between 2,500 and 65,000 views. Complaint ¶ 81. PW is openly and brazenly profiting from operating the PW Websites. Complaint ¶ 83; Graves Decl. ¶ 30. PW prominently displays advertisements on all PW Websites and before each video on each site. Complaint ¶ 84. Further, there are advertisements on PW Websites that link to third-party subscription websites where users must pay a fee to view content; upon information and belief, these advertisements generate further revenue for PW in the form of revenue sharing with the third-party websites. Complaint ¶ 85.

4

Defendant PW's true identity is unknown to Plaintiffs. Defendant PW masks the ownership information of the PW Websites (known as the websites' "WHOIS" data) with a privacy service. Complaint ¶ 69; Lin Decl. ¶ 10. Through the PW Websites, Defendant promotes unauthorized copies of the Works by offering them for free viewing. Complaint ¶ 73; Graves Decl. ¶ 20. Based on the sheer amount of entries and the estimated view counts under each entry, Plaintiffs believe that hundreds, if not thousands, of visitors to the DS Websites have accessed and viewed the unauthorized copies. Graves Decl. ¶ 19.

As with Defendant DS, Defendant PW's infringement of Plaintiffs' Works has been brazen and willful. Similarly, through a contact email address provided by Defendant PW's Registrar—43271254b4af449b89a9d684df665322.protect@withheldforprivacy.com—Plaintiffs have sent numerous takedown notices to the PW.com Website. *See* Graves Decl. ¶¶ 24–25. However, Plaintiffs never received any response from the PW Website. Graves Decl. ¶ 25. Despite Plaintiffs' enforcement efforts, over thirteen hundred (1,300) of the webpage entries still remain live and continuously allow visitors of the PW Website to freely access the Works. Graves Decl. ¶ 26.

The Infringer Defendants' conduct has caused great financial loss and impairment to Plaintiffs' goodwill. Members of the GHS Website have also complained to Plaintiffs about the free, pirated videos they find on the DS and PW Websites. Complaint ¶ 95; Graves Decl. ¶ 27. Therefore, Plaintiffs are forced to take immediate action to enjoin Defendant from further damaging their business and to better protect their copyrights.

## ARGUMENT

### I. Plaintiffs Satisfy the Legal Standards for an *Ex Parte* Temporary Restraining Order

Pursuant to Federal Rules of Civil Procedure 65(b), the Court may issue a temporary restraining order ("TRO") without notice to the adverse party when the moving party clearly shows immediate and irreparable harm to it before the adverse party can be heard in opposition, and any of the movant's efforts to give notice and reasons

5

why such notice should not be required. Fed. R. Civ. P. 65(b)(1); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). Although the Ninth Circuit has cautioned that the "[c]ircumstances justifying the issuance of an *ex parte* order are extremely limited," such an order may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)). An *ex parte* TRO is also proper where notice to the defendant "would render fruitless the further prosecution of the action," such as disposing evidence if given notice. *Id.*

When the movant has met the procedural requirements as set forth in Fed. R. Civ. P. 65(b), the court must consider whether the movant has met the substantial requirements for a TRO. The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL 330346, at *3 (D. Ariz. Jan. 21, 2010). To obtain a TRO or preliminary injunction, a plaintiff must show that "(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit uses a "sliding scale" approach to balance these elements, where an injunction may be granted if the movant shows "serious questions going to the merits" and "a balance of hardships that tips sharply toward the plaintiff." *See, e.g., Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). For reasons below, Plaintiffs meet the above standards to obtain a TRO against Infringer Defendants.

//
//
//

6

**A. Plaintiffs are Likely to Succeed on the Merits of Their Copyright Infringement Claim**

As to preliminary matters, this Court has specific personal jurisdiction over Defendant DS and PW that arise from Defendants' infringing conduct, and this Court is the proper venue hearing this case. Arizona's long-arm statute permits this Court to exercise personal jurisdiction to the maximum extent permitted by the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see, e.g., A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 892 P.2d 1354, 1358 (1995). Accordingly, this Court may find personal jurisdiction over a defendant as long as it comports with the principles of federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *LNS Enterprises LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1071 (D. Ariz. 2020), aff'd, 22 F.4th 852 (9th Cir. 2022). The due process analysis inquires about a defendant's "minimum contacts" with the state, either "continuous and systematic" or "purposeful and sufficient" ones, to establish proper general or specific personal jurisdiction. *LNS Enterprises LLC*, 464 F. Supp. 3d at 1071-73 (internal citations omitted).

Here, Infringer Defendants both have sufficient contacts with the State of Arizona to give rise to Plaintiffs' copyright infringement claim. First, both Infringer Defendants purposefully registered at least one domain name with an Arizona registrar to operate an infringing website. Complaint ¶¶ 23, 47, 71. Next, both Infringer Defendants unlawfully downloaded copyrighted content from Plaintiffs—both of whom are Arizona entities with their principal place of business in Arizona—and thus caused financial and reputational harm to Plaintiffs in Arizona. Complaint ¶ 22. Finally, in illegally downloading the Works, Infringer Defendants used Plaintiffs' GHS Website which expressly states that any users of Plaintiffs' website are bound by an agreement to resolve all intellectual property disputes arising thereunder in Arizona. Complaint ¶ 22. Thus, by persisting in their infringing conduct that continuously causes harms to two Arizona residents, Infringer Defendants avail themselves to personal jurisdiction in Arizona.

//

In the alternative, even if Arizona's long-arm statute does not reach the Infringer Defendants, Federal Rule of Civil Procedures 4(k)(2) authorizes a district court's exercise of personal jurisdiction over a defendant if (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction of any state court of general jurisdiction; and (3) exercising jurisdiction comports with due process. *Hydentra HLP Int. Ltd. v. Sagan Ltd.*, 783 F. App'x 663, 665 (9th Cir. 2019).

The due process analysis under Fed. R. Civ. P. 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis. *Hydentra*, 783 F. App'x at 665. The Ninth Circuit conducts the due process analysis under a three-prong test: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (internal citations omitted). In copyright infringement cases, personal jurisdiction can be established by "purposeful direction" by a defendant, where the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.*; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

Personal jurisdiction is appropriate in this case because the Infringer Defendants committed an intentional act by operating the DS and PW Websites to promote stolen Works from Plaintiffs. Infringer Defendants expressly aim at the State of Arizona by registering their domain names <daftsex.tv>, <daftsex.porn>, <pornwild.com>, <pornwild.to>, and <pornwild-to.niceporn proxy.com> with an Arizona domain registrar, Namecheap. Complaint ¶ 14; Lin Decl. ¶¶ 9, 10. Moreover, these Infringer Defendants' infringing conduct is targeted at Plaintiffs, where Infringer Defendants explicitly use

Plaintiffs' brand name as titles on their websites. Complaint ¶¶ 55, 79. By attracting visitors in Arizona and the United States with free pirated Works, Infringer Defendants financially profit from operating their websites every time they succeed in redirecting a visitor to access their unauthorized copies. Complaint ¶¶ 57-59, 82-85; Graves Decl. ¶ 32-35. Finally, it was foreseeable that Plaintiffs as Arizona companies would be harmed by Defendant DS's and PW's infringing conduct, including harm to their business reputation, and decreased business and profits occurring in Arizona. Complaint ¶ 8; Graves Decl. ¶¶ 31-35. Consequently, Defendants DS's and PW's infringing conduct purposefully directed to Plaintiffs renders specific personal jurisdiction in the State of Arizona.

Venue is also proper. In copyright infringement actions, venue is proper "in the district in which the defendant … resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit courts have interpreted this provision to allow venue in any judicial district where the defendant would be subject to personal jurisdiction. *Brayton Purcell LLP*, 606 F.3d at 1126; *see also Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds*. Since Infringer Defendants are subject to specific personal jurisdiction in the forum, this district should serve as a proper venue for this case to proceed.

Moving on to the substantial issues, a plaintiff must satisfy two requirements to present a prima facie case of direct copyright infringement: (1) the plaintiff's ownership of the allegedly infringing materials, and (2) that the alleged infringers violate at least one exclusive right of the plaintiff under 17 U.S.C. § 106. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 969 (2016).

Here, the copyright registrations establish prima facie evidence of Fornix's copyright in the Registered Works. 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *see also* Complaint ¶ 33; Graves Decl. ¶ 12. Fornix holds all exclusive rights in the Registered Works under 17 U.S.C § 106. Complaint ¶ 33. Fornix is also the beneficial owner of some 800 other works distributed

via the GHS Website which it is currently in the process of registering with the U.S. Copyright Office. Complaint ¶ 34; Graves Decl. ¶ 13. As the exclusive licensee to distribute and display the Registered Works via the GHS Website, CP Productions is entitled to damages caused by infringement upon such rights under 17 U.S.C. § 106(2) & (5). 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled. . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1004 (9th Cir. 2015) (finding that an exclusive agent has standing to sue for copyright infringement upon rights granted under 17 U.S.C. § 106). Infringer Defendants, by unauthorizedly reproducing the Works in their entirety and uploading them for free views and downloads, infringe upon Plaintiffs' exclusive rights under 17 U.S.C. 106(1), (3) (4). *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (finding violation of the plaintiff's distribution right where the defendant made files searchable and copiable for others to download through a peer-to-peer file-sharing service); *see also Disney*, 224 F. Supp. 3d at 969 (finding violation of the plaintiff's reproduction and public performance rights where the defendant made digital copies of the plaintiff's work and offered it for free streaming on the defendant's website). By posting the videos the Works on the DS and PW Websites, Infringer Defendants also infringe upon Plaintiffs' exclusive right of public display. 17 U.S.C. § 106(5).

Furthermore, Infringer Defendants' conduct is unjustifiable by any anticipated defenses to a copyright infringement claim. Infringer Defendants' identical copies of hundreds of Plaintiffs' Works, which even include Plaintiffs' warning message, exclude the possibility that either Defendant created these videos independently. *See* Complaint ¶ 42.

Infringer Defendants' use of Plaintiffs' Works is not fair use. The "fair use" doctrine permits the use of copyrighted materials without the owner's authorization under certain situations. The fair use analysis requires balancing these four factors: (1) the

purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The more "transformative" the use is, meaning the defendant uses plaintiff's copyrighted work in a different context or alters it "with new expression, meaning, or message," the more likely such use is fair use. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (internal citations omitted). However, a transformative use can be outweighed by the fact that the defendant's use is commercial in nature, that the defendant uses a large and substantial portion of the plaintiff's work, or that the defendant's use undermines plaintiff's work's market value. *See, e.g., Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1187 (9th Cir. 2012).

Here, all four factors weigh against Infringer Defendants. The Infringer Defendants' publication of thumbnails of the Works is not transformative use. Unlike *Perfect 10*, where Google's use of thumbnails is for connecting the images to their original sources, Infringer Defendants' use of thumbnails of the Works is to direct users to access the pirated copies located on the respective Infringing Websites, thereby diverting users from the original source, i.e., the GHS Website. Complaint ¶¶ 54-55, 73. Infringer Defendants do not affix "new expression, meaning, or message" to these thumbnails, but rather uses them as exact depictions of Plaintiffs' Works. *See* Complaint ¶ 54-55, 73. Next, Infringer Defendants' use of Plaintiffs' Works is commercial in nature. Both Infringer Defendants display numerous advertisements on the same page as Plaintiffs' Works. Complaint ¶ 58, 84-85. Along with this revenue, Defendant DS promotes a third-party subscription service, which generates even more profit. Complaint ¶ 58-59. Moreover, the sheer number of videos posted to the Infringing Websites lends to the conclusion that Infringer Defendants have made a substantial windfall due to the GHS videos. Complaint ¶ 56, 80. Collectively, these videos help attract visitors' attention to the DS and PW Websites. Lastly, Infringer Defendants' publication of the videos greatly interferes Plaintiffs' business in a niche content market. Graves Decl. ¶ 29. Indeed,

Plaintiffs suffer great and ongoing financial loss resulting from Infringer Defendants' unauthorized uses of the Works. Graves Decl.¶¶ 27-29, 33. Thus, Infringer Defendants' use of the Plaintiffs' Works does not characterize as fair use.

Finally, the labeling of the video titles explicitly marking Plaintiffs' brand name indicate that the Infringer Defendants knowingly and willfully infringed upon Plaintiffs' copyright, which renders Defendants' infringement inexcusable. *See* Complaint ¶¶ 55, 79; Graves Decl. ¶¶ 19, 21.

### B. Plaintiffs are Likely to Suffer Irreparable Harm in the Absence of a TRO

Following the Supreme Court's decisions in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) and *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), the Ninth Circuit no longer presumes irreparable harm in copyright cases, but instead requires a showing of a likelihood of irreparable harm. *See, e.g., Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011). However, to prevail on this factor, a plaintiff "need not prove that irreparable harm is certain or even nearly certain." *See Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011).

Here, Plaintiffs will likely suffer irreparable harm resulting from Infringer Defendants' willful and ongoing infringing conduct. First, by making pirated copies of the Works, Infringer Defendants undermine Plaintiffs' ability to control the exclusive use and transmission of its copyrighted Works. Graves Decl. ¶ 28; *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors.").

Second, Infringer Defendants' ongoing infringing conduct damages the goodwill Plaintiffs have established in a very niched content market. Infringer Defendants' dissemination of the free videos challenges Plaintiffs' pay-to-watch membership system, and Plaintiffs have received numerous complaints from their members regarding the Infringer Defendants' conduct. Graves Decl. ¶ 27. Although it is difficult or impossible to quantify in precise terms the financial damages, the sheer number of videos available

signal the impact of the Infringer Defendants' conduct. Graves Decl. ¶ 32. Plaintiffs have incurred unquantifiable loss given the number of movies involved and the unknown quantity of illegal distributions. Graves Decl. ¶¶ 30, 32. Notwithstanding the immeasurable financial damages to Plaintiffs, the Infringer Defendants' conduct poses a threat to Plaintiffs' reputation that they have built in the market as a premier producer and distributor of adult video content, causing irreparable damages to their goodwill. Graves Decl. ¶¶ 33, 35; *see also Disney*, 869 F.3d at 866 (finding that the defendant's provision of free streams of the plaintiff's copyrighted works undermined the value of the works and damaged the plaintiff's goodwill).

Finally, Plaintiffs will likely suffer irreparable harm without a TRO because the Infringer Defendants are likely to escape liability for its actions by transferring their domain name or funds to continue their infringing conduct. Both Infringer Defendants artfully mask their true identities by using a privacy service to register the domain names of all the Infringing Websites. Complaint ¶¶ 46, 70; Lin Decl. ¶ 9, 10. Plaintiffs will continuously suffer from such harm if Infringer Defendants are able to utilize the Infringing Websites or its substitutions to persist on its infringing conduct.

### C. The Balance of Equities Tips Strongly in Plaintiffs' Favor, Especially in the Context of Willful Copyright Infringement

The balance of equities tips in Plaintiffs' Favor because Defendants have no cognizable interest when their entire operation of the Infringing Websites is based on knowing and willful copyright infringement. Defendants "cannot complain of the harm that will befall [them] when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Also, Defendants' persistent infringement of the Works is not an isolated incident. Both DS and PW Defendants display a growing collection of Plaintiffs' Works, along with other copyright owners' works. Graves Decl. ¶ 22. Though Plaintiffs acknowledge that the Infringing Websites also contain videos not owned by Plaintiffs nor the subject of this action, Plaintiffs notice that these videos are copied from non-parties that also implemented a

pay-to-view mechanism to limit access to their content. *Id*. It is highly likely that Infringer Defendants built and maintained all the Infringing Websites with infringing content from multiple copyright owners. Therefore, Defendants' usage titles and tags marking copyright owners' names indicate that their infringing conduct is not accidental or isolated, but rather intentional and targeting. *See Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508, at *2 (D. Ariz. July 14, 2021) (temporarily restraining the defendant's entire infringing websites, which contained more than plaintiff's copyrighted videos, as the most narrowly tailored way to halt the plaintiff's irreparable harm).

### D. An Injunction against Copyright Infringement Is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney*, 869 F.3d at 978 (internal citations omitted). Fornix, as the legitimate copyright owner of its Works, should be entitled to injunctive relief to maximize protection of its copyrights. *See Trial Film*, 2021 WL 2949508, at *2.

According to the foregoing, Plaintiff Fornix requests a TRO disabling the Infringing Websites and preventing Infringer Defendants from transferring the Domain Name.

### E. An *Ex Parte* TRO is Appropriate in This Case

In this case, Infringer Defendants present many evasive traits that raise Plaintiffs' concern that if Infringer Defendants had notice of this request, they may cause further damage to Plaintiffs' business by quickly transferring the infringing materials to another domain name or hosting website, thereby mooting this request. First, both Defendants operate anonymously and conceal their identifying information intentionally. There is no identifying information on any of the websites for contacting either Infringing Defendant, and Defendants' identifying information on the WHOIS records have all been obscured. For example, the DS registrant information lists "Redacted for Privacy", leaving only one

email address available for contact: daftsex.com@myprivacy.net. Complaint ¶ 12; Lin Decl. ¶¶ 8-9. It is likely that Defendants can quickly delete the infringing video links to the unauthorized copies upon notice, and replace them with new entries and links by reuploading the infringing videos. Graves Decl. ¶ 28. Finally, Infringer Defendants are likely to deactivate or transfer the websites to another domain name or web host upon notice of the lawsuit and thus evade legal liability. *See Trial Film*, 2021 WL 2949508, at *3 (finding that overseas defendants who operated anonymously and communicated solely through emails would likely destroy, move, hide, or otherwise make inaccessible the proceeds of their infringing materials if given notice). The fact that the Infringer Defendants already use several other websites to host the information demonstrate the ease in which this action can be accomplished.

Therefore, Plaintiffs urge the Court to issue a TRO directing Namecheap and Easy DNS to deactivate the Domain Names without notice and place a registrar lock on the Domain Names—preventing further transfer by Defendant. At that point, Plaintiffs would be protected against further and ongoing irreparable injury, and such order would then give Defendants notice and an opportunity to quickly correct any potentially erroneous ruling—should it elect to appear and contest Plaintiffs' claim.

### F. Minimal or No Security Should be Required by Plaintiffs

Fed. R. Civ. P. 65(c) requires a plaintiff to give "security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." District courts retain the discretion to set the bond amount as it sees fit or waive the security requirement. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir.1999) ("[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.").

The instant case presents circumstances that justify a waiver of such security by Plaintiffs. As stated above, Plaintiffs are likely to prevail on their copyright infringement claim. Also, Infringer Defendants cannot claim harm for their loss based on their willful

and ongoing infringement. There is nothing legitimate about Infringer Defendants' copying and distributing of Plaintiffs' Works; thus Plaintiffs respectfully request this Court use its discretion to waive the security. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (the bond amount may be zero if there is no evidence the party will suffer damages from the injunction). In the alternative, since any hardship the Infringer Defendants face results from its voluntary decision to conduct a business around violating Plaintiffs' and others' copyrights, a minimal security in the amount of $100 is appropriate.

## II.      Plaintiffs Are Entitled to Several Equitable Remedies

17 U.S.C. § 502 authorizes district courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Federal Rule of Civil Procedures 65(d) allows an order of injunctive relief to bind non-parties "who are in active concert or participation" with the parties or their officers, agents, servants, employees, and attorneys. Fed. R. Civ. P. 65(d)(2)(C). "'Active concert or participation' has been interpreted to include both aiders and abettors of, and privies of, an enjoined party." *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1384 (Fed. Cir. 2013) (citing *Golden State Bottling Co., v. NLRB*, 414 U.S. 168, 179–80 (1973)). This understanding of "active concert or participation" takes into account the concern that the objectives of an injunction may be "thwarted by the conduct of parties not specifically named." *Id.*

### A. Plaintiffs are Entitled to Expedited Discovery to Reveal Infringer Defendants' Identity

The Court should permit Plaintiffs to conduct expedited discovery directed to Namecheap and EasyDNS to reveal Infringer Defendants' identity. Fed. R. Civ. P. 26(d) allows a court to order expedited discovery before Rule 26(f) conference where good cause is found. *See, e.g., Bleiberg Ent., LLC v. John & Jane Does 1-47*, No. CV-13-00595-PHX-GMS, 2013 WL 3786641, at *4 (D. Ariz. July 19, 2013); *Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 499 (D. Ariz. 2012). "Good cause may be

16

found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (internal citation omitted). To find such good cause, courts in this district consider whether a plaintiff (1) can identify the missing party with sufficient specificity that the Court can determine that Defendants are real persons or entities that could be sued in federal court; (2) has identified all previous steps taken to locate the elusive defendant; (3) can establish that its suit against Defendants could withstand a motion to dismiss; and (4) has shown that there is a reasonable likelihood that expedited discovery will lead to identifying information about Infringer Defendants that would make service of process possible. *See Breaking Glass Pictures, LLC v. Doe*, No. CV-13-00599-PHX-GMS, 2013 WL 3805637, at *4 (D. Ariz. 2013); *Dead Season LLC v. Doe 1*, No. CV-13-00592-PHX-GMS, 2013 WL 3805590, at *6 (D. Ariz. 2013); *Bleiberg Ent*, 2013 WL 3786641, at *4.

As elaborated above, Plaintiffs have established a prima facie case of copyright infringement that would survive a motion to dismiss. Here, the Infringing Websites do not provide any information that can remotely identify Infringer Defendants. Graves Decl. ¶ 31. The publicly available WHOIS records of the Domain Names show that both Infringer Defendants name and organization information is masked by privacy services. Lin Decl. ¶ 9-10. Infringer Defendants' true IP address are both shielded by Cloudflare, Inc., a California web infrastructure and website security company. Lin Decl. ¶¶ 13-14. The only information for Plaintiffs to identify Infringer Defendants with specificity is the Domain Names registered with Namecheap and EasyDNS that paves the path for conducting expedited discovery. Thus, Plaintiffs should be granted leave to conduct early discovery to identify Infringer Defendants. *AMA Multimedia LLC v. Unknown Parties*, No. CV-15-01674-PHX-ROS, 2015 WL 13651008, at *2 (D. Ariz. Sept. 23, 2015) (permitting early discovery as it was the only method for uncovering defendants' identities where defendants used privacy service to hide their domain name registration information); *see also Dead Season*, 2013 WL 3805590, at *4.

//

17

### III.   Plaintiffs Request That the Court Permits Alternative Service to Infringer Defendants by Email through the Domain Name Registrar in This Case

Plaintiffs also ask this Court for leave to effect service of the Summons and the Complaint by alternative means upon the Infringer Defendants. As to the means of service, Plaintiffs request the Court authorize Plaintiffs' counsel to serve the Defendant PW via the email address at 43271254b4af449b89a9d684df665322.protect@withheldforprivacy.com and Defendant DS via the email address at daftsex.com@myprivacy.net. Out of an abundance of caution to ensure Infringer Defendants receive proper notice of this lawsuit, Plaintiffs further request the Court to direct Namecheap, Inc., an Arizona-based registrar of the Domain Name, to serve the relevant papers to all email and/or mailing addresses which Namecheap may have on file for Infringer Defendants, as well as EasyDNS, the registrar of the <daftsex.com> Domain Name.[1]

In the event that Infringer Defendants are United States residents, Ariz. R. Civ. P. 4.1(k) authorizes this Court to order alternative service upon the plaintiff's showing that traditional means of service are impracticable. Ariz. R. Civ. P. 4.1(k)(1); *see also BMO Harris Bank, N.A. v. Guthmiller*, No. CV-14-00275-PHX-JAT, 2014 WL 2600362, at *1 (D. Ariz. June 10, 2014) (granting alternative service at Defendant's email address). As elaborated above, Plaintiffs cannot obtain any ascertainable information to reveal the Infringer Defendants' residency or place of business. Plaintiff can only rely on one email address to effectuate service without an expedited discovery to reveal Infringer Defendants' identity. Thus, Plaintiffs are forced to seek this Court's permission for alternative service since no traditional means of service is viable to Plaintiffs.

---

[1] The only website not maintained by Namecheap is <daftsex.com>, which is maintained through EasyDNS. Two other DS Websites are maintained through Namecheap, and all of the PW Websites are maintained through Namecheap, Inc.

On the other hand, Fed. R. Civ. P. 4(f) permits alternative service methods to a foreign defendant. Under Rule 4(f), service may be effected upon individuals in foreign countries by any of three mechanisms: (1) "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention..."; (2) "by a method that is reasonably calculated to give notice," for example, "as the foreign authority directs in response to a letter rogatory or letter of request"; and (3) "*by other means not prohibited by international agreement, as the court orders.*" Fed. R. Civ. P. 4(f)(1)- (3) (emphasis added). To obtain the Court's permission to utilize Rule 4(f)(3), plaintiffs must show that "the facts and circumstances of the present case necessitate . . . district court intervention." *Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (internal citations omitted). The Ninth Circuit has held that alternative service under Rule 4(f)(3) does not require attempted service by other methods before resorting to court-ordered service under this rule. *Id.* at 1015–16. Such alternative service should be reasonably calculated to give the defendant notice and an opportunity to be heard, to comport with constitutional notions of due process. *Id.* at 1016. Yet, due process only requires that service must be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 7430062, at *1 (D. Ariz. Mar. 3, 2011) (permitting service by e-mail under due process) (quoting *Rio Props.*, 284 F.3d at 1016, 1017).

In the instant case, service via the e-mail addresses which Infringer Defendants used to register the Domain Names is reasonably calculated to apprise Infringer Defendants of this action and application. Infringer Defendants acquired and accessed the Domain Names electronically, and must have provided at least one valid email address as means of contact. Specifically, Namecheap's user agreement requires that Infringer Defendants' "regularly monitor email sent to the email address associated with your account and domain names…." *See* Namecheap, *Domain Name Registration Agreement*,

https://www.namecheap.com/legal/domains/registration-agreement/ (last accessed

November 7, 2022). Infringer Defendants have used and responded to Namecheap and

EasyDNS in the past to register the Domain Names, and is likely still using the email

address to receive notifications of maintaining the Domain Names. However, such

information is withheld by privacy services and only accessible to the Domain Name

registrars, Namecheap and EasyDNS. Lin Decl. ¶¶ 9-10. Under the circumstances, there

are no other viable means to serve Infringer Defendants, because Plaintiffs could not

obtain any identifying information without an expedited discovery. Thus, it would not be

unfair to serve Infringer Defendants in this manner.

## CONCLUSION

For the foregoing, Plaintiffs respectfully request that this Court issue an Order (1)

deactivating and canceling the DS Domain Names and PW Domain Names and bar such

domain names from re-registration; (2) deactivating Infringer Defendants' websites

located at <daftsex.com>, <daftsex.tv>, <daftsex.porn>, <pornwild.com>, <pornwild.to>,

<pornwild-to.nicepornproxy.com> ("Infringing Websites") and permanently delete all

information stored thereon relevant to Plaintiffs' Works; (3) deleting all copies of

Plaintiffs' Works that have been uploaded to any third-party websites associated with DS

and PW; (4) ceasing the provision of all internet services for the maintenance and

operation of the Infringing Websites, including but not limited to domain name

registration, hosting, security, content delivery, and reverse proxy services; (5) directing

Google to remove the DS and PW Websites from internet search results; (6) permitting

alternative service by Plaintiffs' counsel to Defendant PW via the email address at

43271254b4af449b89a9d684df665322.protect@withheldforprivacy.com and Defendant

DS via the email address at daftsex.com@myprivacy.net, and alternative service by

Namecheap and EasyDNS via any other registered email or mailing addresses associated

with the Domain Names; (7) permitting expedited discovery directed to EasyDNS and

Namecheap to reveal the Infringer Defendants' identities as the registrants of the

//

Infringing Websites; and (8) set a show cause hearing why said TRO should not become a preliminary injunction against Infringer Defendants.

Dated: November 14, 2022
        Brooklyn, New York

Respectfully submitted,

**LEWIS & LIN LLC**

_____

David D. Lin, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiffs Fornix Holdings LLC and CP Productions, Inc.*